

FILED IN CLERK'S OFFICE
U S D C   Atlanta

AUG 1 4 2006

JAMES N. HATTEN, Clerk
By: _____
Deputy Clerk

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| ECHO LENTZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| AND ALL THOSE SIMILARLY SITUATED | ) | CIVIL ACTION FILE NO. _____ |
| | ) | |
| Putative opt-in Plaintiffs | ) | **1:06-CV-1893** |
| | ) | |
| v. | ) | JURY TRIAL DEMANDED **WSD** |
| | ) | |
| HOSPITALITY STAFFING SOLUTIONS, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

COMES NOW Echo Lentz (hereinafter "Plaintiff") and asserts her claims under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. §201 et seq. (hereinafter "FLSA") for unpaid overtime, retaliatory discharge and other relief on the grounds set forth below:

### JURISDICTION AND VENUE

1. The jurisdiction of this Court is invoked under 28 U.S.C. §§ 1331 and 1337. This Court also has jurisdiction pursuant to 29 U.S.C. § 216(b).

2. Pursuant to 28 U.S.C. § 1391 venue is appropriate in this judicial district as the Defendant resides herein.

1

## PARTIES

3.  Plaintiff is a former employee of Hospitality Staffing Solutions, LLC (hereinafter "Defendant" or "HSS").

4.  Defendant is an employer within the meaning of the FLSA.

5.  Defendant is subject to the jurisdiction of this Court.

6.  Defendant may be served with process via service on John F. Sandy Smith, 3343 Peachtree Road, Suite 1600, Atlanta, Georgia 30326.

## FACTUAL ALLEGATIONS

7   Plaintiff began working for Defendant in April, 2004 as an Accounts Payable Clerk.

8.  Plaintiff was initially placed with Defendant through a staffing agency.

9.  Defendant bought Plaintiff's contract out from the staffing agency through which she was initially placed.

10  Plaintiff's starting salary with Defendant was $38,000.00 per year.

11. Plaintiff's regularly scheduled hours of work as an Accounts Payable Clerk were 9:00 a.m - 5:00 p.m. Monday through Friday.

12. Defendant's corporate office is located at 1640 Powers Ferry Road, Suite 3-200, Marietta, Georgia.

13. Plaintiff worked at Defendant's corporate office at 1640 Powers Ferry Road, Suite 3-200, Marietta, Georgia.

2

14. After an initial period of employment, Plaintiff subsequently moved into a Payroll Clerk position in Defendant's Payroll Department.

15. Defendant and International Hotel Services ("IHS") are sister companies and are jointly owned by another entity.

16. As a Payroll Clerk, Plaintiff processed payroll every other week for Defendant.

17. Plaintiff's work as a Payroll Clerk included processing paychecks for hundreds of hourly hotel workers in various properties across the United States.

18. Plaintiff also processed payroll for IHS on a regular basis out of Defendant's corporate office location.

19. As a Payroll Clerk, Plaintiff did not qualify for any of the overtime exemptions (executive, professional or administrative exemptions) under the FLSA.

20. Plaintiff was non-exempt for the purpose of overtime compensation.

21. Plaintiff was required to work late on Wednesdays and Thursdays to process Defendant's bi-weekly payroll.

22. Plaintiff was required to work late on Wednesdays in order to finalize Defendant's payroll with ADP so Defendant could receive the payroll checks by the following day.

23. Other non-exempt administrative employees in Defendant's payroll department worked overtime during various pay periods.

24. Defendant routinely did not pay non-exempt administrative employees overtime for the hours they worked in excess of forty (40) in a given week.

25. Defendant informed Plaintiff that she was not entitled to receive overtime compensation because she was paid on a salary basis

26. Defendant informed other administrative employees in the corporate office that they were not entitled to receive overtime compensation because they were paid on a salary basis.

27. Over the course of Plaintiff's employment with Defendant her hours of work increased.

28. Gerry Gurbacki is Defendant's Chief Executive Officer ("CEO").

29. Dave Rogers is Defendant's Chief Financial Officer ("CFO")

30. In and around June, 2005 Thomasina Shepard, an investigator from the United States' Department of Labor ("DOL"), conducted an on-site investigation regarding Defendant's pay practices.

31. Investigator Shepard informed CFO Rogers that certain of the employees in the corporate office were non-exempt salaried employees, and Defendant was obligated under the FLSA to pay them overtime for the hours that they worked in excess of forty (40) in any given week.

4

32. The result of the DOL audit was that Defendant was found to be in violation of the FLSA's overtime provisions by not paying certain of its non-exempt employees at the corporate office overtime for their overtime hours.

33. The DOL instructed Defendant to remit unpaid overtime to numerous current and former employees.

34. After the DOL investigation, around the end of June, 2005, several corporate office employees were brought into a meeting with management. Plaintiff attended this meeting, along with Financial Analyst Nichole Laporte, Billing Supervisor Minya Banjanin, Billing Clerk Ann-Marie Genet, Office Manager Jamie Genet, Accounts Payable Representative Fernando Oglivie, Invoice Clerk Carla Pineda, and Payroll Clerk Guillermo Iriarte.

35. In the meeting, CFO Rogers presented those in attendance with a document which erroneously stated that corporate office employees worked a maximum of forty (40) hours a week.

36. Several employees in attendance at the meeting stated that the content of the document that CFO Rogers was asking them to sign was inaccurate.

37. Those in attendance were given the option to sign the document or, alternatively, they would be changed to an hourly status and their benefits of employment would be changed. Specifically, CFO Rogers told the employees that they would not receive paid vacation and they would not be eligible for

health insurance coverage under Defendant's group health insurance policy.

38. Despite vocal objections from several of the employees, all the employees in attendance signed the document.

39. In and around July, 2005 Defendant started circulating a timesheet for corporate office employees to sign on a weekly basis. The timesheet was supposedly being circulated to track the employees' hours of work per week.

40. However, the weekly timesheet did not accurately document the amount of hours worked by corporate office employees.

41. Specifically, the timesheet that Defendant used was a generic document that listed times of arrival, times for lunch, and times for departure. The designated times on the timesheet were static and never changed. As such, although employees routinely arrived before the time noted on the timesheet and left work after the time noted on the timesheet, their hours of work were not accurately recorded.

42. Corporate office employees signed Defendant's inaccurate and misleading weekly timesheets primarily to preserve their compensation and benefits of employment.

43. In and around January, 2006 Plaintiff stopped sending around the weekly timesheet for employees in the corporate office to sign. Plaintiff did this, in part, because employees in the corporate office were being required to work a

significant number of hours, including overtime hours; however, they were not being paid overtime in accordance with federal wage and hour laws.

44. Plaintiff told Human Resources Manager Brenda Gardner that she was no longer willing to send the weekly timesheet to corporate office employees knowing that they were being coerced into signing a timesheet which was inaccurate and/or false.

45. In response, Ms. Gardner told Plaintiff that she did not blame her, and Plaintiff no longer sent the document around the office from that point forward.

46. Upon information and belief, Defendant did not keep any records of the hours that corporate office employees were working from that point forward up to and through the date of Plaintiff's termination.

47. Defendant's payroll encompassed hundreds of hotel workers at approximately 180 properties.

48. Plaintiff worked in excess of forty (40) per week during numerous pay periods to prepare Defendant's payroll.

49. From January, 2006 forward Plaintiff worked in excess of forty (40) hours per week during numerous pay periods in Defendant's corporate office on payroll issues.

50. At times, Plaintiff arrived at work around 4:00 a.m. and left around 10:00 p.m., during which time she worked to get Defendant's payroll out to ADP for

timely processing.

51. Although Plaintiff was paid for some of the overtime hours she worked prior to January, 2006 pursuant to an order from the DOL, Plaintiff was not paid at the overtime rate for all of the hours that she worked over eight (8) per day or forty (40) per week.

52. Defendant's failure to pay Plaintiff at the overtime rate for all of the overtime that she worked constitutes a violation of the FLSA.

53 At various times employees called Defendant's corporate office and complained that they were not being paid overtime.

54. Plaintiff and CFO Rogers reviewed certain payroll records after some of these calls were received. Certain of the payroll and billing records that Plaintiff and CFO Rogers reviewed supported the complaints regarding unpaid overtime.

55 One employee in Indiana called the corporate office and complained about working overtime in two (2) hotels, however, all of the hours were paid at a straight time rate.

56. On one occasion, in and around February, 2006 while Plaintiff was sitting in CFO Rogers' office, CFO Rogers called Regional Vice-President Reginald Walker and told him that the company was not paying overtime to non-exempt employees, and the company could get in trouble if it was audited. In response, RVP Walker told CFO Rogers to pretend that he did not see the

payroll records which demonstrated this.

57. In March, 2006 the DOL was contacted about alleged unlawful pay practices at Defendant/IHS.

58. The DOL conducted an investigation of the alleged unlawful pay practices at Defendant/IHS.

59. When Plaintiff was interviewed by the DOL investigator, CFO Rogers was in attendance. CFO Rogers said to Plaintiff during the interview, "You don't work overtime do you," expecting that Plaintiff would falsely state that she did not work over forty (40) hours per week  Plaintiff told the DOL Investigator that she and other corporate office employees regularly worked over forty (40) hours per week and were not paid overtime. CFO Rogers was visibly affected by this statement.

60. In response, CFO Rogers tried to tell the DOL Investigator that this only happened in limited circumstances, specifically, every other Thursday on payroll weeks.

61 CFO Rogers falsely stated to the DOL Investigator that, in general, Plaintiff did not work overtime.

62 CFO also falsely stated to the DOL Investigator that he was unaware that employees routinely worked from home.

63. During the course of the investigation, employees were encouraged by

management to lie to the DOL investigator about the amount of hours they worked.

64. During the DOL investigation CFO Rogers encouraged employees to "protect the company" and similar words to that effect.

65. During the course of the investigation, several non-exempt corporate office employees falsely represented to the DOL investigator that they did not work more than forty (40) hours per week.

66. The period of time covered by the DOL investigation was from September, 2005 up to and through the end of December, 2005 and/or the first of January, 2006 .

67. Defendant/IHS were found to have violated the FLSA's overtime provisions.

68. Defendant/IHS were fined by the DOL for failing to pay overtime to non-exempt employees.

69. As a result, Defendant/IHS were required by the DOL to pay several employees, including Plaintiff, Nichole Laporte and Jamie Genet, for hours they had worked over forty (40) per week but for which they had not been paid overtime.

70. DOL Investigator Tonya Williams came to the corporate office to have CFO Rogers sign an agreement regarding the number of overtime hours worked by several employees, including Plaintiff, Nichole Laporte and Jamie Genet

CFO Rogers stated to Investigator Williams while she was at Defendant's office that these individuals basically worked no more than 40 hours per week and did not regularly work overtime.

71    CFO Rogers' statement to Investigator Williams was false. Plaintiff, Nichole Laporte and Jamie Genet had worked numerous hours in excess of forty (40) per week during various pay periods.

72.   Plaintiff worked at various times from her home.

73.   Defendant was aware that Plaintiff worked at times from her home.

74    Defendant purchased Plaintiff a laptop computer in March, 2006 so that she could work from home

75.   Plaintiff signed a written agreement showing that she had been provided with a laptop computer and that she was responsible for it.

76.   Other corporate office employees worked at times from their homes.

77.   Defendant was aware that other corporate office employees worked at times from their homes

78.   There are documents at Defendant's corporate office which show that Plaintiff worked over forty (40) hours per week during various pay periods.

79.   There are documents at Defendant's corporate office which show that other administrative employees worked over forty (40) hours per week during various pay periods.

80. CFO Rogers approved overtime for Plaintiff at various times from September, 2005 to January, 2006.

81. CFO Rogers approved overtime for other administrative and/or payroll employees in the corporate office at various times from September, 2005 to January, 2006.

82  Plaintiff was not paid overtime for the overtime hours she worked from January, 2006 up to and through the date of her termination

83. On or about May 1, 2006 CEO Gurbacki called a meeting with all the payroll employees. Plaintiff, Payroll Clerk Crystal Glover, and Payroll Manager Keri Willett attended the meeting.

84. In the meeting, CEO Gurbacki stated that he would not pay anyone overtime if they were too incompetent to get their jobs done in 40 hours, nor would he pay employees overtime as a result of their own "fucking mistakes."

85. Defendant failed to keep and maintain accurate records of the hours that Plaintiff and other non-exempt employees in the corporate office worked.

86. Plaintiff was terminated on May 4, 2006.

87  Before Plaintiff was terminated, she complained to management, including CFO Rogers and CEO Gurbacki,  on several occasions that she and other non-exempt employees in the corporate office were not being paid overtime for the hours that they worked in excess of forty (40) in numerous weeks.

88. Plaintiff was terminated, in whole or in part, in retaliation for making these complaints to management.

## CLAIM FOR RELIEF

### VIOLATION OF 29 U.S.C. § 207
### (FAILURE TO PAY OVERTIME)

89. Paragraphs 1 through 88 are incorporated herein by this reference.

90. Defendant failed and/or refused to pay Plaintiff and other similarly-situated non-exempt employees in the corporate office overtime for hours they worked in excess of forty (40) in numerous weeks.

91. Defendant's violation of the FLSA was intentional and willful.

92. Said violation gives rise to a claim for relief under the FLSA for the unpaid overtime for three (3) years prior to the filing of this Complaint, liquidated damages in an amount equal to the unpaid overtime, declaratory and injunctive relief, prejudgment interest and reasonable attorney's fees and expenses of litigation, pursuant to 29 U.S.C. §§ 207 & 216.

### VIOLATION OF 29 U.S.C. § 215
### (RETALIATORY DISCHARGE)

93. Paragraphs 1 through 92 are incorporated herein by this reference.

94. Before Plaintiff was terminated, she complained to management on several occasions about the fact that she and other non-exempt employees in the

corporate office were not being paid overtime for hours they worked in excess of forty (40) in various weeks.

95    Management was aware of Plaintiff's complaints at the time that Plaintiff was terminated.

96.   Plaintiff was terminated, in whole or in part, in retaliation for making these complaints to management.


WHEREFORE, Plaintiff requests this Court:

(a)    Take jurisdiction of this matter;

(b)    Grant a trial by jury as to all matters properly triable to a jury;

(c)    Issue a judgment declaring that Plaintiff is covered by the provisions of the FLSA and that Defendant has failed to comply with the requirements of the FLSA;

(d)    Issue preliminary and permanent injunctions directing Defendant to comply with the provisions of the FLSA;

(e)    Award Plaintiff and the other similarly-situated, non-exempt employees all unpaid overtime to which they were entitled and liquidated damages equaling 100% of said amounts as required by the FLSA;

(f)    Award Plaintiff appropriate back pay and front pay as a result of Defendant's retaliatory discharge;

(g)   Award Plaintiff compensatory damages in an amount to be determined by the enlightened conscience of an impartial jury;

(h)   Award Plaintiff and the other similarly-situated, non-exempt employees pre-judgment interest on all amounts owed;

(i)   Award Plaintiff reinstatement into her former position with Defendant;

(j)   Award Plaintiff her attorney's fees and expenses of litigation; and

(k)   Award any and such other further relief this Court deems just, equitable and proper.


Respectfully submitted this _10_ day of August, 2006.


A. Bradley Dozer, Jr.
Georgia Bar No. 228701
Mitchell D. Benjamin
Georgia Bar No. 049888


JOHNSON & BENJAMIN LLP
730 Peachtree Street, Suite 750
Atlanta, Georgia 30308
(404) 969-4110     Telephone
(404) 969-4142     Facsimile