IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

ECHO LENTZ,

                Plaintiff,

   v.                                **1:06-cv-1893-WSD**

HOSPITALITY STAFFING
SOLUTIONS, LLC,

                Defendant.

## OPINION AND ORDER

The matter is before the Court on Defendant Hospitality Staffing Solutions, LLC's ("Defendant") Motion for Summary Judgment [29] and on Defendant's Motion to Strike [40].

## I.    INTRODUCTION AND FACTUAL BACKGROUND

Plaintiff in this case seeks unpaid overtime wages she alleges to have incurred while in Defendant's employ, and she seeks damages for what she alleges was a retaliatory discharge. At issue in this case is whether Plaintiff was entitled to overtime pay under the Fair Labor Standards Act of 1938 ("the FLSA").

Defendant is a staffing company that provides personnel to the hospitality industry.[1]  Defendant's employees serve as housekeepers, laundry personnel, banquet staff and other positions at hotels and other hospitality businesses. Defendant is paid by its clients to meet staffing needs.  Defendant in turn employs and pays the personnel who work at client sites, such as hotel employees.  Def.'s Statement of Material Facts [29] at ¶ 2.

Defendant pays its approximately 4,000 employees, most of whom work at client sites, based on hours worked.  Id. ¶ 5.  Defendant uses ADP to process paychecks to its employees.  Every two weeks, Defendant's payroll information, such as hours worked per employee and other identifying data, must be uploaded to ADP, for ADP to process and deliver on time accurate paychecks to Defendant's employees.  Id. ¶ 6.  If the payroll data uploaded to ADP is inaccurate or late, ADP may not be able to process employee paychecks and or deliver them on time.  Id. ¶ 7.  Recurring problems in payroll processing can, and has in the past, caused Defendant to lose employees.

---

[1] The Court draws its factual summary from those facts contained in Defendant's Statement of Material Facts [29] which were undisputed by Plaintiff, and from the Court's review of transcripts of the depositions of David Rogers ("Rogers Dep.") and Echo Alexander (f/k/a Echo Lentz) ("Lentz Dep.").

Plaintiff began working for Defendant in April 2004.  Sometime prior to January 2006, she began working in Defendant's payroll department,[2] reporting to Defendant's CFO, Dave Rogers.   Plaintiff's responsibilities included inputting information on new employees, reviewing data received from Defendant's billing department and converting that data to payroll information for upload to ADP, personally uploading the payroll information to ADP on a bi-weekly basis, and sorting paychecks received from ADP and timely sending them to the correct regions of the country.  Id. ¶ 11.  Plaintiff worked with at least two other employees in the payroll department, Guillermo Iriarte and Crystal Glover.  Id. ¶¶ 13, 15; Pl.'s Resp. to Def.'s Statement of Material Facts [33] at ¶ 4.  Plaintiff earned $40,000.00 per year and occasionally received gift certificates of various dollar amounts in recognition of her extra effort.  Plaintiff's salary was not reduced if she worked less than forty hours per week.  Def.'s Statement of Material Facts at ¶ 17.  It is undisputed that Plaintiff was not paid overtime during the time period at issue in this case.

---

[2] Exactly what Plaintiff's responsibilities were in the payroll department, including her official job title, underpin most of the dispute in this case.  The Court summarizes those facts which are not disputed.

Plaintiff alleges in her Complaint [1] that she was required to work late on most Wednesdays and Thursdays to process Defendant's bi-weekly payroll and was not paid overtime for these overtime hours.

In the spring of 2005, when Plaintiff worked in the payroll department, the United States Department of Labor ("DOL") conducted a routine wage and hour audit of the Defendant.  Id. ¶ 18.  The DOL determined that certain administrative employees, including Plaintiff, were entitled to overtime pay.  Rogers Dep. at 21-22, 51, 59.[3]

---

[3] Mr. Rogers testified as follows:

Q: So the DOL, essentially, ruled that some of the employees that had been classified as exempt should have been classified as nonexempt and paid overtime for those hours?
A: Right, five of them.
Q: And you recall which employees those were?
A: Yeah, I believe so – Jamie, Minja, Nichole, Ann-Marie, and Echo, I believe.
Q: And did [Defendant] appeal that determination by the United States Department of Labor?
A: No.  It only totaled 30 – $3,000 total.
Q: I'm sorry.  What was the amount that it totaled?
A: About 3,000.  The whole thing, even with the ones in the field was 5200.
Q: Do you recall what period of time that covered?
A: Two years.  It covered the period for 2003 and '4.
Q: A full 24-month period?
A: Yes.  It was a regular, random audit.

Rogers Dep. at 21-22.

> Q: Mr. Rogers, [Defendant], on two separate occasions, was ordered by the Department of Labor to pay administrative employees overtime that they had worked; correct?
> A: That is correct.
> Q: Why was [Defendant] – why did [Defendant] have to be ordered by the Department of Labor on two separate occasions to pay administrative employees overtime that they had worked?
> A: The first time, we didn't really know we were doing anything wrong. The only reason was that we weren't tracking hours, and she said we had to. The second time, I left it up to the office how they wanted to track the hours, that it was a requirement. The way they wanted it – it wasn't that we were doing it. The office wanted to do it.
> Q: Well, when you say 'left it up to the office,' can you be more specific – what you mean by that?
> A: A meeting with everybody in the office here, 'How do you want to handle this? Do you want to punch a time clock? Do you want to go on an hourly basis?' Nobody wanted to do that. One of the reasons was, people had flexible hours. They could come and go as they wanted. They could take time off as they wanted. Nobody wanted to give that up. After the second one, I didn't give them a choice.

Rogers Dep. at 51.

> Q: I guess what I'm trying to get at is, even if Echo – Ms. Lentz may have been aware that Ms. Williams [the DOL investigator] was monitoring the front door, so to speak, do you contend that that would have impacted the comings and goings of other administrative employees?
> A: Other ones?
> Q: Yes.
> A: Only – no, I don't think so. I think most people are pretty honest. I think it's important to note that only three people were awarded based on her investigation.

Following the DOL's 2005 investigation, Rogers met with Defendant's administrative personnel to discuss the need to maintain documentation of the hours worked by administrative personnel.  Def.'s Statement of Material Facts at ¶ 18.  Defendant's administrative employees, including Plaintiff, were offered either to remain salaried employees or be paid by the hour.  The employees, including Plaintiff, voted to remain salaried.  Id.  Plaintiff alleges that, several times in 2005 and 2006, she complained to Defendant's management that she was working overtime hours and that she was entitled to overtime pay.

Rogers instructed Defendant's administrative personnel that a written record (the "Timesheet") had to be kept to document the hours worked by each administrative employee.  Id. ¶ 19.  At a minimum, Plaintiff suggested edits to the Timesheet on which hours were to be recorded.  Lentz Dep. at 63.  The Timesheet apparently allowed employees to record the hours they worked each week, but did

---

Q: Which employees were those?
A: Echo, Nichole, and Minja – or Jamie.

Rogers Dep. at 59.

not provide for the recording of overtime hours worked.[4]  Beginning around July

2005, Plaintiff circulated the Timesheet to corporate office employees on a weekly

basis.  Pl.'s Resp. to Def.'s Statement of Material Facts [33] at ¶ 23.  In January

2006, Plaintiff ceased circulating the Timesheet, allegedly because it did not allow

the administrative employees to accurately record their overtime hours.  Id.  Rogers

was unaware that Plaintiff had discontinued circulating the Timesheet.  Def.'s

Statement of Material Facts at ¶ 25.

In the spring of 2006, the DOL conducted another wage and hour audit of

Defendant.  The DOL again determined that certain of Defendant's administrative

employees, including Plaintiff, did not receive overtime pay they were entitled to

receive.

Defendant had a company pay date scheduled for April 28, 2006.

Defendant's payroll department uploaded pay data to ADP on April 26.  On April

27, Defendant received from ADP only approximately half of the paychecks

required to pay its employees.  As a result, Defendant spent approximately seven

days manually calculating and reissuing paychecks to a large portion of its

---

[4]  There is a factual dispute over what the document showed and if the
employees were permitted to insert edits to the document to show hours worked in
excess of forty hours per week.

workforce.  Id. ¶ 35.  The parties dispute how exactly the error occurred and who if anyone caused it.  It is undisputed that a payroll error of some cause did occur immediately preceding the April 28, 2006 pay date.

Defendant terminated Plaintiff on May 4, 2006.  Plaintiff alleges the termination was, in whole or in part, retaliation against her for complaining about her lack of overtime pay.

On August 14, 2006, Plaintiff filed this action.  She alleges claims for unpaid overtime and retaliatory discharge under the FLSA.[5]  Plaintiff seeks compensation for approximately 130 hours of allegedly unpaid overtime worked from January 29, 2006 to May 4, 2006.  Pl.'s Resp. to Def.'s Mot. for Summ. J. [33] at 4.

On March 15, 2007, Defendant moved for summary judgment on all claims [29].  Defendant also moved to strike [40] portions of Plaintiff's response to the Motion for Summary Judgment.

---

[5] Plaintiff originally filed the Complaint in her individual capacity and as named plaintiff in a putative collective action.  The parties consented, and the Court agreed, to dismiss without prejudice any claims on behalf of other class members [24].

## II.    DISCUSSION

### A.    <u>The Standard on a Motion for Summary Judgment</u>

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  The party seeking summary judgment bears the burden of demonstrating the absence of a genuine dispute as to any material fact. <u>Herzog v. Castle Rock Entm't</u>, 193 F.3d 1241, 1246 (11th Cir. 1999).  Once the moving party has met this burden, the non-movant must demonstrate that summary judgment is inappropriate by designating specific facts showing a genuine issue for trial.  <u>Graham v. State Farm Mut. Ins. Co.</u>, 193 F.3d 1274, 1282 (11th Cir. 1999). "The nonmoving party need not present evidence in a form necessary for admission at trial; however, he may not merely rest on his pleadings."  <u>Id.</u>

"At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts."  <u>Scott v. Harris</u>, 127 S. Ct. 1769, 1776 (2007).  Where the record tells two different stories, one blatantly contradicted by the evidence, the Court is not required to adopt that version of the facts when ruling on summary judgment.  <u>Id.</u>

"[C]redibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury . . . ." Graham, 193 F.3d at 1282.  "If the record presents factual issues, the court must not decide them; it must deny the motion and proceed to trial." Herzog, 193 F.3d at 1246.  But, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," summary judgment is proper.  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

"The general rule is that inadmissible hearsay cannot be considered on a motion for summary judgment.  Rule 56(e) of the Federal Rules of Civil Procedure requires that 'affidavits' that support or oppose summary judgment motions 'shall be made on personal knowledge, [and] shall set forth such facts as would be admissible in evidence.'  This rule also applies to testimony given on deposition." Macuba v. Deboer, 193 F.3d 1316, 1322-23 (11th Cir. 1999) (internal citations omitted).  However, a court "may consider a hearsay statement in passing on a motion for summary judgment if the statement could be 'reduced to admissible evidence at trial' or 'reduced to admissible form,'" such as if a statement falls within an exception to the hearsay rule.  Id. at 1323.

B.   **Unpaid Overtime Claims under the FLSA**

1.   **Applicable Law**

The Fair Labor Standards Act provides:

No employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce . . . for a workweek longer than forty hours . . . unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(a)(2)(C).  "A person is employed if he or she is suffered or permitted to work.  It is not relevant that the employer did not ask the employee to do the work . . . . In order to prevail on [a FLSA claim, a] . . . Plaintiff[] must prove that [she was] suffered or permitted to work without compensation.  Courts have interpreted this to mean that a FLSA plaintiff must demonstrate that (1) he or she worked overtime without compensation and (2) the [employer] knew or should have known of the overtime work."  Allen v. Bd. of Pub. Educ. for Bibb Cty., 495 F.3d 1306, 1314-15 (11th Cir. 2007) (internal citations omitted).

"Although a FLSA plaintiff bears the burden of proving that he or she worked overtime without compensation, '[t]he remedial nature of this statute and the great public policy which it embodies . . . militate against making that burden

an impossible hurdle for the employee.'" Id. at 1315 (quoting Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 687 (1946)).  "Thus, in situations where the employer's records cannot be trusted and the employee lacks documentation, the Supreme Court held that an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference.  The burden then becomes the employer's, and it must bring forth either evidence of the precise amount of work performed or evidence to negate the reasonableness of the inference to be drawn from the employee's evidence."  Id. at 1316 (internal quotation marks omitted).

The FLSA's overtime pay requirements do not apply to all employees. Specifically, the FLSA's overtime pay requirements "shall not apply with respect to . . . any employee employed in a bona fide executive, administrative, or professional capacity . . . ."  29 U.S.C. § 213(a)(1).  Federal regulations define which employees qualify for the "administrative" or "executive" exemptions.

To be a bona fide administrative employee, the employee must (1) be compensated on a salary or fee basis at not less than $455.00 per week; (2) have as a primary duty the performance of office or non-manual work directly related to

the management or general business operations of the employer or the employer's customers; and (3) have a primary duty which includes the exercise of discretion and independent judgment with respect to matters of significance.  29 C.F.R. § 541.200(a); Ferrell v. Gwinnett Cty. Bd. of Educ., 481 F. Supp. 2d 1338, 1343 (N.D. Ga. 2007).  "In general, the exercise of discretion and independent judgment involves the comparison and the evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered. The term 'matters of significance' refers to the level of importance or consequence of the work performed."  29 C.F.R. § 541.202(a).  "[T]his phrase implies that the person has the authority or power to make an independent choice, free from immediate direction or supervision and with respect to matters of significance." Bosch v. Title Max, Inc., No. CIV.A.03-AR-0463-S, 2005 WL 357411, at *8 (N.D. Ala. Feb. 7, 2005) (internal quotation marks omitted); accord 29 C.F.R. § 541.202(c).  An employee's job title, standing alone, "is of little use for exemption purposes."  Bosch, 2005 WL 357411, at *5.  Instead, the Court examines the factual record to determine what duties the employee performed and whether those duties satisfy the requirements for a FLSA exemption.

To be a bona fide executive employee, the employee must (1) be compensated on a salary basis at no less than $455.00 per week; (2) have as her primary duty the management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof; (3) customarily and regularly direct the work of two or more other employees; and (4) have the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight.  29 C.F.R. § 541.100(a); Jackson v. Jean Coutu Group (PJC) USA, Inc., No. CV 206-194, 2007 WL 1850710, at *3 (S.D. Ga. June 26, 2007).  "An employee who merely assists the manager of a particular department and supervises two or more employees only in the actual manager's absence does not meet" the requirement that the employee supervise two or more employees.  29 C.F.R. § 541.104(c).

### 2.    Application of the Administrative Employee Exemption

Defendant argues that Plaintiff is exempt from overtime pay because she falls under the administrative employee exception.  The Court disagrees.

The only element of the administrative employee exemption disputed by the parties is whether Plaintiff exercised "discretion and independent judgment with

respect to matters of significance."  29 C.F.R. § 541.200(a)(3).  Plaintiff's

undisputed job responsibilities included "inputting information on new hires;

reviewing data received from [Defendant's] billing department and converting that

data to payroll information for uploading to ADP; personally uploading the payroll

information to ADP on a bi-weekly basis; and sorting paychecks received from

ADP and sending the checks to the correct regions on a timely basis."  Def.'s

Statement of Material Facts [29] at ¶ 11.  Based upon that description, Plaintiff

seems to have performed core clerical duties, being responsible only for receiving,

digesting, and inputting information into a computer system.  Defendant's

description of Plaintiff's job duties does not suggest Plaintiff had any discretion in

performing her duties.

Plaintiff's deposition testimony reveals the same lack of discretion.  When

asked to describe her job responsibilities as of January 2006, Plaintiff testified: "I

input new hires.  I checked grids coming from one set – from billing to payroll and

then submitted that information over to ADP.  I kept – put all of the reports

together.  Batched all the checks and sent them out via FedEx."  Lentz Dep. at 34-

35.  Plaintiff was also responsible for sorting checks once they arrived from ADP.

Id. at 35.  Submitting the payroll information to ADP involved "[c]opying and

pasting information from one spreadsheet to another and then resaving it as the file [ADP] needed it to be in." Id. at 37. The remainder of Plaintiff's deposition testimony is consistent with these representations.

Defendant argues, however, that Plaintiff exercised discretion with respect to the Timesheet prepared following the July 2005 meeting with Rogers and created to track employees' hours. Defendant asserts that Rogers had no role in preparing the Timesheet. Def.'s Statement of Material Facts [29] at ¶ 22. Defendant argues that Plaintiff's edits to the Timesheet and her January 2006 decision to discontinue its circulation were exercises of discretion. In her deposition, Plaintiff admits that she had some input in the Timesheet's creation, although she was not the primary author. Lentz Dep. at 63. Plaintiff also admits that she decided to discontinue circulating the timesheets sometime around January 2006. Lentz Dep. at 70-71.

The Court determines that a genuine issue of fact exists as to whether Plaintiff exercised discretion on a matter of significance with respect to the Timesheet and whether any discretion she may have had over this task was sufficient to qualify her as an administrative employee. Although Plaintiff may have had some discretion over how the Timesheet looked or what information it contained, the Court does not believe that to be sufficient discretion over a matter

of significance.  Two additional facts inform the Court's conclusion.  Rogers

testified that he has never seen a copy of the Timesheet.  Rogers Dep. at 24.  If the

Timesheet had been a matter of significance, it seems logical that Plaintiff's direct

supervisor would have at least reviewed it.  Defendant also asserts that had it

known Plaintiff had stopped circulating the Timesheet, it would have taken

"corrective action."  Def.'s Statement of Material Facts at ¶ 25.  In short, had

Defendant known that Plaintiff had stopped following Rogers' directive, it would

have taken some action to re-implement the directive.  This situation seems less an

exercise of Plaintiff's discretion and more an example of an employee who simply

chooses, without authorization, to stop doing her job.  That is not the sort of

discretion exempted by the FLSA.  The disputed factual issue is whether discretion

over a task such as this one, assuming discretion existed, is sufficient for Plaintiff

to satisfy the administrative exemption of the FLSA's overtime pay requirements.

Whether Plaintiff exercised independent discretion is a disputed question of fact

precluding entry of summary judgment.

### 3.    Application of the Executive Exemption

Defendant also argues that Plaintiff fell under the executive exemption to the

FLSA.  The Court again disagrees.

To qualify as an executive employee, Plaintiff must have had the primary duty of managing the business or a department, must have customarily and regularly supervised or directed the work of two or more employees, and must have had the authority to hire and fire employees or to influence decisions regarding the employment status of employees. The Court considers Plaintiff's responsibilities as a whole to determine if they satisfy those requirements.

It is undisputed that Plaintiff was the most senior of three employees within the payroll department. Plaintiff reported directly to Rogers. The two other payroll department employees, Iriarte and Glover, also appear to have reported to Rogers, although the factual record is not particularly clear on the formal reporting structure for those employees. At times, Plaintiff instructed Iriarte and Glover on performance of their job duties. Lentz Dep. at 45-46.

Defendant argues Plaintiff supervised Iriarte and Glover. The factual record is insufficient to support this contention. Plaintiff testified repeatedly that she did not supervise those employees and that when they failed to follow her instructions, she turned to their direct supervisor, Rogers, for him to enforce their compliance. Id. Although Plaintiff viewed herself as the de facto head of the payroll department, she was not, as Defendant argues, the payroll "manager." Indeed, the

-18-

title of "payroll manager" appears to have been a title informally adopted by Plaintiff.  Id. at 38-39.  When Rogers learned that Plaintiff held herself out as the payroll "manager," he apparently made it clear to her that she did not have that position.  Id. at 39, 42-43.[6]  Plaintiff testified that she was the "fallback person" in the payroll department, id. at 43, was "in charge of letting everything go," id. at 39, and that the buck stopped with her.  Id. at 45.  While that testimony indicates that she acted with a certain amount of responsibility in the payroll department, it does not sufficiently establish that she officially supervised the department.

What, at most, is apparent after reviewing the deposition testimony is that Plaintiff was the most senior employee in payroll and that she exerted influence over the other two employees.  Often, it appears her suggestions were followed.  When they were not, Plaintiff turned to her supervisor.  Lentz Dep. at 45-46.  It seems natural that the less-senior employees would look to the more-senior Plaintiff for guidance on how to accomplish their jobs.  Plaintiff did not, however, have any formal role in running the payroll department.

---

[6] Rogers referred to Plaintiff as the payroll "manager" in his deposition. Rogers Dep. at 8.  To the extent Plaintiff and Rogers disagree on her job description, that disagreement creates a dispute of fact.  The Court is precluded from assessing witness credibility on summary judgment.  Graham, 193 F.3d at 1282.

Defendant relies heavily on Plaintiff's role in the firing of Iriarte.  It is undisputed that Rogers fired Iriarte.  Def.'s Statement of Material Facts at ¶ 14; Rogers Dep. at 9.  It is also undisputed that Plaintiff notified Rogers of several problems she had with Iriarte's work and that Rogers fired Iriarte at least partly because of Plaintiff's comments.  Def.'s Statement of Material Facts at ¶ 14; Roger Dep. at 9; Lentz Dep. at 45.  No party argues, however, that Plaintiff had the authority to fire any employee on her own.  That authority was reserved to Rogers. The Court is not able to determine, based on the factual record before it, whether Plaintiff's recommendation to fire Iriarte was "entitled to particular weight," or whether it was merely accorded the normal weight given to complaints by employees.  A dispute of fact exists over whether Plaintiff satisfied the fourth element of the executive exemption.

The Court necessarily concludes that genuine issues of material fact exist regarding whether Plaintiff managed a department, supervised at least two employees, and had hiring and firing authority sufficient to satisfy the executive exemption.  The parties tell conflicting stories as to how much management authority Plaintiff possessed.  A jury is required to resolve that conflict.

Defendant's Motion for Summary Judgment on the unpaid overtime claim is denied.

### C.      Retaliation Claims Under the FLSA

Under the FLSA, "it shall be unlawful for any person . . . to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to" the Act.  29 U.S.C. § 215(a)(3).

In order to establish a *prima facie* case of retaliation, Plaintiff must show that (1) she engaged in activity protected by the FLSA; (2) she subsequently suffered an adverse employment action; and (3) the adverse action was causally related to her protected activity.  Wolf v. Coca-Cola Co., 200 F.3d 1337, 1342-43 (11th Cir. 2000).  If Plaintiff makes out a *prima facie* case, the burden of production shifts to Defendant to articulate a legitimate, non-retaliatory reason for the adverse employment action.  Id. at 1343; McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).  "This is not a shift in the burden of persuasion but simply requires the employer to present evidence to explain its actions.  If successful, the employer defeats the presumption of intentional discrimination created by the *prima facie* case."  Bythewood v. Unisource Worldwide, Inc., 413 F.

-21-

Supp. 2d 1367, 1372 n.2 (N.D. Ga. 2006) (internal citations and quotation marks omitted).  If Defendant satisfies this production, the burden shifts back to Plaintiff to show that the stated grounds are merely a pretext for retaliation.  Wolf, 200 F.3d at 1343-44; Texas Dept. of Cmty. Affairs v. Burdine, 450 U.S. 248, 255-56 (1981).

Defendant concedes in its motion for summary judgment that Plaintiff can make a *prima facie* case for FLSA retaliation.  Def.'s Mot for Summ. J. at 19.  In response, Defendant contends it had a legitimate non-retaliatory reason for terminating Plaintiff:  Defendant argues that Plaintiff committed serious and repeated errors in preparing and transmitting payroll data to ADP, culminating in the April 28, 2006 errors in payroll.

It is undisputed that an error occurred in payroll processing for the April 28, 2006 paydate, and that error caused, or contributed in causing, a situation where Defendant received only approximately half of the paychecks it needed from ADP. Defendant now argues that Plaintiff caused the error and that it fired Plaintiff because of it.

Plaintiff responds that problems with the April 28, 2006 payroll were a pretext manufactured by Defendant as a legitimate non-retaliatory reason for her termination and that Defendant has wrongfully embellished her role in the April

-22-

28, 2006 payroll errors.  Pl.'s Resp. to Def.'s Mot. for Summ. J. [33] at 23.  She

argues the error resulted from a computer system glitch, and that Rogers personally

reviewed the payroll data prior to its submission to ADP.  Any errors, she argues,

arose in the computer transmission or processing, and were not the result of human

error.  Id.  Plaintiff concludes that Defendant did not identify the payroll errors as

the reason for her termination until this lawsuit was filed.  Id. at 25 n.10.

Because Defendant has identified a legitimate, non-retaliatory reason for her

termination, Plaintiff bears the burden to show a genuine issue of fact over whether

that reason is pretextual.  The record shows that a dispute of fact exists.  Two main

issues attendant to the discharge dispute are a) whether Plaintiff caused the

undisputed payroll problem in April 2006; and b) if so, whether Defendant

terminated Plaintiff for that reason.

Although Defendant argues that Plaintiff caused the payroll error in April

2006, Rogers testified that it is not clear if Plaintiff caused the error.  Rogers

testified:  "Echo blamed ADP.  I knew it wasn't ADP's fault because it didn't

make logical sense.  I thought Echo had done it."  Rogers Dep. at 15-16.  Rogers

later testified that nobody knows how the error occurred and that he is unaware of

any facts which would discredit Plaintiff's claim that human error did not cause the

payroll problem.  Id. at 16.  Rogers also testified that although he did not recall

reviewing the payroll file submitted to ADP before submission, he did review the

second file uploaded to fix the problem, and he was unaware of any facts which

would show that the second file was not identical in all respects to what was

initially submitted.  Id. at 19.  Plaintiff's testimony supports her claims that the file

uploaded to ADP to fix the problem was identical to the one initially uploaded to

ADP, Lentz Dep. at 101-04, and that Rogers personally reviewed what she termed

"the final" numbers on the payroll before it was uploaded.  Id. at 116, 121.  She

also testified that neither she nor ADP knew how the error in processing arose.  Id.

at 102-03.  Based on the evidence in the record, the Court cannot resolve who or

what caused the April 2006 payroll error.

The record evidence also fails to show that the April 2006 payroll error was

the reason for Plaintiff's termination.  The parties seem to agree that Plaintiff was

not given a specific reason for her termination when she was fired, other than it

was what Defendant's CEO, Gerry Gurbacki, directed.  Rogers Dep. at 38-45;

Lentz Dep. at 29-30, 153-54.  Given the close temporal relationship between

Plaintiff's complaints about her not receiving overtime pay and her termination,

and the inability of Defendant to present evidence showing that Plaintiff was

notified of the April 2006 payroll problems at the time she was fired, there is a disputed question of fact whether Defendant's non-retaliatory reason for termination was a pretext.  The Court is not empowered on summary judgment to weigh competing testimonial evidence.  Defendant's motion for summary judgment on the retaliation claim is denied.

### D. Defendant's Evidentiary Objections and Motion to Strike

Defendant asserts several objections to evidence relied on by Plaintiff in opposing the motion for summary judgment.  Defendant's first objection is that Plaintiff has impermissibly attempted to rewrite her deposition testimony through her affidavit attached to her response to the Motion for Summary Judgment. "Under the law of this Circuit, we may disregard an affidavit submitted solely for the purpose of opposing a motion for summary judgment when that affidavit is directly contradicted by deposition testimony. 'When a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact [for summary judgment], that party cannot thereafter create such an issue with an affidavit that merely contradicts, *without explanation*, previously given clear testimony.'  Such an affidavit would be a sham." McCormick v. City of Fort Lauderdale, 333 F.3d 1234, 1240 n.7 (11th Cir. 2003) (quoting Van T.

Junkins & Assoc., Inc. v. U.S. Industries, Inc., 736 F.2d 656, 657 (11th Cir.1984)).

The Court has reviewed in detail Plaintiff's affidavit and deposition testimony.

Although Plaintiff's affidavit recharacterizes some of her testimony, the Court

cannot say it misrepresents what Plaintiff testified to under oath – and in any event,

the Court relies principally on the deposition transcript, not the affidavit, in

evaluating disputed questions of material fact for summary judgment.

Defendant also objects to Plaintiff's characterization of certain alleged

actions of Rogers.  The affidavit of Ann-Marie Genet, an Office Assistant with

Defendant, contains assertions that Rogers telephoned Genet and left her a

message, instructing her, in essence, not to cooperate with Plaintiff in this suit.

Defendant submitted a counter declaration of Genet, in which she asserts that she

signed the prior affidavit without reading it and that the paragraph about Rogers

allegedly influencing her testimony is false.  Plaintiff in turn submitted competing

affidavits of Plaintiff and her counsel describing the process Plaintiff used in

obtaining the original affidavit from Genet.  Plaintiff and her counsel describe a

plausible story that Genet had been sent a draft version of her original affidavit via

email and that she confirmed the affidavit's correctness in conversations with

Plaintiff and her counsel.  It is also possible that Genet did not read her original

affidavit until recently and that the paragraph about Rogers' phonecall is inaccurate.  The Court is presented with a simple question of credibility as between several witnesses, which is best left to a jury.  Regardless, the Court has not relied on Plaintiff's allegation of witness tampering in deciding the motion for summary judgment.[7]

Defendant also moves to strike the original affidavits of Plaintiff and Genet.  A motion to strike is not the appropriate remedy.  Federal Rule of Civil Procedure 12(f) permits the Court upon motion of a party to strike from any "pleading" an insufficient defense or any redundant, impertinent, or scandalous matter.  Fed. R. Civ. P. 12(f).  The Federal Rules also narrowly define "pleadings" to the exclusion of motions for summary judgment.  Fed. R. Civ. P. 7(a).  It is improper to strike an affidavit attached to a motion for summary judgment.  The proper method to challenge such an affidavit is to challenge the admissibility of evidence contained in the affidavit.  Jordan v. Cobb Cty., Ga., 227 F. Supp. 2d 1322, 1346-47 (N.D. Ga. 2001); Morgan, 700 F. Supp. at 1576 ("Rather than filing a motion to strike as

---

[7]  The Court notes that Plaintiff's only allegation of "witness tampering" was with respect to Genet.  The other witnesses in this case testified unequivocally that no one from the Defendant attempted to color their testimony.  LaPorte Dep. at 20; Benjamin Dep. at 22-23; Glover Dep. at 19; Pineda Dep. at 33-34; Rogers Dep. at 50.

under Rule 12, the proper method for challenging the admissibility of evidence in

an affidavit [in support of a motion for summary judgment] is to file a notice of

objection to the challenged testimony.").  The Court denies Defendant's motion to

strike and considers Defendant's arguments as objections to the admissibility of

evidence contained in the affidavits.

### 1.    Genet's Original Affidavit

Defendants object to paragraphs 10, 13, and 15 of Genet's affidavit as

inadmissible hearsay, specifically the portion stating that Genet was "told that

employees who are paid on a salary basis are not eligible to receive overtime, and

the company was not required to pay salaried employees overtime," Genet Aff. ¶

10, the portion describing Rogers' phone message, id. ¶ 13, and discussions Genet

had with supervisory personnel about overtime hours worked in other states.  Id. ¶

15.  "'Hearsay' is a statement, other than one made by the declarant while

testifying at the trial or hearing, offered in evidence to prove the truth of the matter

asserted."  Fed. R. Evid. 801(c).  All three statements identified by the Defendant

as hearsay could be introduced as admissible non-hearsay evidence in order to

prove what Genet heard, rather than the truth of what the statements asserted.[8]  In any event, the statements are not material to the facts at issue in the motion for summary judgment (i.e., whether Plaintiff was entitled overtime compensation based on her position of employment and whether Defendant retaliated against Plaintiff).  The Court has not considered them in evaluating the motion for summary judgment.[9]

### 2.    Plaintiff's Original Affidavit

Defendants also object to several paragraphs of Plaintiff's original affidavit as inadmissible.  The Court considers each objection:

**Paragraph 24:**  Defendant objects to Plaintiff's assertion that other "administrative employees in the corporate officer were told that they were not entitled to receive overtime compensation . . . ."  Lentz Aff. ¶ 24.  This appears to

---

[8]  The Court is not ruling on the ultimate admissibility at trial of these statements; the Court merely notes that the hearsay rule expressly excludes as hearsay a statement offered for reasons other than to prove the truth of what is asserted.

[9]  Defendant's objection to paragraph 12 of Genet's original affidavit is that Genet could not have had personal knowledge of what Defendant's management knew.  Although the Court agrees, this valid objection does not alter the Court's ruling on summary judgment.  At issue in this case is whether Plaintiff worked overtime, not Genet.

be inadmissible hearsay (because Plaintiff was not present when the statements were made), but the Court has not used this evidence in evaluating whether summary judgment is warranted.  What is at issue in this case is whether Plaintiff was entitled to overtime compensation.

**Paragraph 27:** Defendant objects to purported statements of a DOL investigator.  If offered for the truth of what is being asserted, this would be inadmissible hearsay.  Regardless, the Court notes that Defendant's officer Rogers admitted during his deposition that the DOL twice identified several employees, including Plaintiff, who had not received the overtime pay required by the FLSA. Rogers Dep. at 21-22, 51, 59.  The Court did not rely in paragraph 27 in ruling on summary judgment.

**Paragraphs 28-29:** Defendant objects that Plaintiff does not have personal knowledge of the results of the DOL audits.  The Court need not express any ruling on whether Plaintiff's testimony in this regard would be admissible, however, because Rogers also admitted the assertions contained in paragraphs 28-29. Rogers Dep. at 21-22.

**Paragraph 34:** Defendant objects to the claim that Rogers was aware that the Timesheet did not accurately document employee hours.  As Plaintiff cannot

demonstrate personal knowledge of what Rogers knew, that assertion is inadmissible, and the Court has not considered it on summary judgment.

**Paragraphs 36, 39, and 40:** Defendant objects that these paragraphs contain inadmissible hearsay. A statement is not hearsay if it is offered only to show what was said, rather than whether what was said is true. Each of these statements could be offered as non-hearsay. Regardless, none of this evidence is material to whether summary judgment is appropriate.

**Paragraphs 44-46:** Defendant objects to the admissibility of several statements made by Rogers to a DOL investigator in the presence of Plaintiff. Plaintiff can testify to what Rogers said. As for the truth of what Rogers asserted, the statements contained in paragraphs 44-46 fall within the admission by a party-opponent non-hearsay exception because Rogers would have been speaking within the scope of his employment with Defendant. Fed. R. Evid. 801(d)(2)(D).

**Paragraph 47:** In paragraph 47, Plaintiff identifies several hearsay statements by unidentified declarants. Absent greater foundation, this paragraph is inadmissible. The Court has not considered it on summary judgment.

**Paragraphs 48-50:** Paragraph 48 asserts that Plaintiff was told several things about the scope of the DOL audits. Those statements are hearsay and appear

to lack foundation.  The Court notes, however, that admissible testimony of Rogers establishes the existence, scope, and result of DOL audits in 2005 and 2006. Paragraph 49 is admissible if Plaintiff has personal knowledge, and the assertions of paragraph 49 are also supported by Rogers' testimony.  Paragraph 50 contains a statement of Rogers.  This statement is admissible either as non-hearsay or as an admission of a party-opponent.

**Paragraphs 52-53:** Plaintiff has not laid an appropriate foundation for testimony as to what Rogers knew, and the last sentence of paragraph 52 would be inadmissible.  If Plaintiff has personal knowledge of overtime approved in 2005 through 2005, paragraph 53 would be admissible.

**Paragraph 64:** The statements of Laporte and Glover as to whether payroll errors occurred after Plaintiff's departure are inadmissible hearsay.  Statements by those employees regarding payroll errors are not within the scope of their employment with Defendant.  Fed. R. Evid. 801(d)(2)(D).  The Court has not relied on this paragraph in ruling on summary judgment.

**Paragraph 65:** The last three sentences of paragraph 65 appear to go beyond Plaintiff's personal knowledge and would be inadmissible unless Plaintiff can establish a sufficient foundation.

**Paragraph 69:**  Plaintiff cannot testify regarding what Rogers knew without establishing greater foundation, and the statement that "CFO Rogers knew this" would be inadmissible.

The Court does not base its summary judgment ruling on any evidence deemed inadmissible.  The admissible evidence in the record establishes that genuine issues of material fact exist over whether Plaintiff was entitled to overtime compensation, and for how many hours, and whether Defendant retaliated against Plaintiff in violation of the FLSA.  Defendant's motion for summary judgment is denied.

## III.   CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Defendant Hospitality Staffing Solutions, LLC's Motion for Summary Judgment [29] is **DENIED**.

**IT IS HEREBY FURTHER ORDERED** that Defendant's Motion to Strike [40] is **DENIED**.

**SO ORDERED** this 28th day of January, 2008.

_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE